**Lydia FIGUEROA, as parent and next friend of Yaritza Ramos, Plaintiff,**

v.

**Shirley S. CHATER, Commissioner of Social Security,[1] Defendant.**

No. 94–CV–6556L.

United States District Court, W.D. New York.

Jan. 23, 1996.

---

1. By Public Law No. 103–296, 108 Stat. 1472 (codified at 42 U.S.C. § 901, note) the Social

Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995. Accordingly, the "Commissioner" has been substituted for the "Secretary" throughout this Decision and Order. *See* Transition Rules at 42 U.S.C. § 901, note.

James R. Sheldon, Jr., Neighborhood Legal Services, Inc., Buffalo, NY, for Lydia Figueroa, as parent and next friend of Yaritza Ramos.

Mary Pat Fleming, U.S. Attorney, Federal Centre, Buffalo, NY, Brian M. McCarthy, Asst. U.S. Atty., Rochester, NY for Donna E. Shalala.

## DECISION AND ORDER

LARIMER, Chief Judge.

Plaintiff Lydia Figueroa, as parent and next friend of her minor daughter Yaritza Ramos, commenced this action pursuant to 42 U.S.C. §§ 405 and 1383(c)(3), to review the final determination of the Commissioner of Social Security (the "Commissioner") denying her application for Supplemental Security Income ("SSI") disability benefits. Pending before me is the Commissioner's motion for judgment on the pleadings, pursuant to Fed.R.Civ.P. 12(c). For the reasons set forth below, the motion is denied and the matter is remanded to the Commissioner for further proceedings consistent with this Decision and Order.

## BACKGROUND

Plaintiff applied for SSI disability benefits on behalf of her daughter ("Yaritza") in August 1990 and again in July 1992. The primary basis for both applications was that Yaritza is learning disabled. Both applica-

tions were denied initially and on reconsideration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which hearing occurred on April 8, 1994. The ALJ found that Yaritza is not disabled. This determination became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on September 26, 1994. This action to review the Commissioner's determination followed.

## DISCUSSION

### A. The Standard of Review

■ A court may reverse the factual findings of the Commissioner only if those findings are not supported by substantial evidence in the record. 42 U.S.C. §§ 405(g) and 1383(c)(3). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). The determination of the Commissioner is conclusive as long as it is supported by substantial evidence and is not based on legal error. *Crawford v. Bowen*, 687 F.Supp. 99, 102 (S.D.N.Y.1988) (*citing Aubeuf v. Schweiker*, 649 F.2d 107, 112 (2d Cir.1981)).

### B. The Standard for Finding a Disability

A person is considered to be disabled under the Social Security Act if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). In the case of a child under the age of 18, the child is deemed to be disabled if he suffers from any medically determinable physical or mental impairment of comparable severity to the impairments which would render an adult disabled. *Id.*

"Comparable severity" for a child means that the impairment so limits the child's ability to function independently, appropriately, and effectively in an age-appropriate manner that the impairment and the limitations resulting from it are comparable to those which would disable an adult. 20 C.F.R. § 416.924(a). For a child such as Yaritza, between 3 and 16 years of age, the comparability of disability is measured primarily by whether the impairment substantially reduces the child's ability to "[g]row, develop, or mature physically, mentally, or emotionally and, thus, to engage in age-appropriate activities of daily living ... in self-care, play and recreation, school and academics, community activities, vocational settings, peer relationships, or family life." 20 C.F.R. § 416.924(a)(2); 20 C.F.R. § 416.924b(b)(3).

■ The Commissioner must follow a four-step evaluation process to determine whether a child has an impairment of "comparable severity" such that he or she is entitled to SSI disability benefits. *See* 20 C.F.R. § 416.924(b). First, it must be determined whether the child is engaging in "substantial gainful activity." *Id.* at subpart (c). If so, there can be no finding of disability. If not, then it must be determined whether or not the child has a severe impairment, or combination of impairments. *Id.* at subpart (d). If not, there is no disability. If there is an impairment, it must then be determined whether or not the impairment meets or equals certain impairments set forth in the Listing of Impairments, 20 C.F.R. § 404, subpart P, Appendix 1. *Id.* at subpart (e). If so, then the child is deemed to be disabled. If not, then the evaluation proceeds to its fourth and final step—an individualized functional assessment ("IFA"). *Id.* at subpart (f). The IFA measures "the impact of [the child's] impairment(s) on [his] overall ability to function independently, appropriately, and effectively in an age-appropriate manner." *Id.* This analysis will determine whether the child has an impairment of comparable severity to an impairment that would disable an adult. *Id.*

■ Formulating an IFA for the child requires an analysis of 6 so-called "domains"— the 'cognitive' function; the 'communicative' function; the 'motor' function; the 'social' function; the 'personal/behavioral' function; and the 'concentration' function (which requires an analysis of the child's concentra-

tion, persistence and pace in the completion of age-appropriate tasks). 20 C.F.R. 416.924d(h)(1)–(6). Each domain is assessed separately, and, pursuant to the Commissioner's regulations, a child between the ages of 3 and 16 is deemed to be "disabled" if he (1) is impaired to a marked degree in one domain and to a moderate degree in at least one other domain; or (2) he is impaired to a moderate degree in three of the six domains. 20 C.F.R. § 416.924e(c)(2)(i)(ii).

In this case, the ALJ determined that Yaritza (1) was not engaged in substantial activity; (2) was severely impaired; but (3) the impairment did not meet or equal the impairments listed on Appendix 1 of 20 CFR part 404, subpart P. Thus, he was required to perform the fourth step of the process: the IFA. The ALJ determined that Yaritza was not markedly impaired in any domain and that she was impaired to a moderate degree in only one domain, the 'communicative' function domain. Accordingly, the ALJ found that Yaritza did not suffer an impairment of comparable severity to that of a disabled adult, and he denied plaintiff's application.[2]

### C. The Parties' Arguments and My Findings

The parties do not dispute the ALJ's finding regarding the first 3 steps of the 4–step evaluation process. Rather, their dispute centers on the last step—the IFA. The Commissioner asserts that the ALJ's findings are supported by substantial evidence and must be upheld. Plaintiff agrees with the ALJ's finding of moderate impairment in the 'communicative' function domain but asserts that the evidence also supports a finding of moderate impairment in two other domains—the 'cognitive' function and the 'concentration' function.

■ I find that the Commissioner's determination is not supported by substantial evidence. In light of the evidence in the record, the ALJ failed to adequately explain the basis for his determination that Yaritza is

moderately impaired only in the 'communicative' function domain but not impaired in any other domain—particularly the 'cognitive' function domain and the 'concentration' function domain.

■ The ALJ's decision and determination must be based on the medical record and not his own independent assessment. Where there is conflicting evidence—as was the case here—the ALJ must explain the basis for his determination rejecting evidence that supports a finding of disability. Unless the ALJ explains the basis for his decision, it is impossible for the claimant and for a reviewing court to determine whether the ALJ's decision was supported by substantial evidence.

■ A court "cannot . . . conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered." *Ryan v. Heckler,* 762 F.2d 939, 941 (11th Cir.1985).

■ It is clear that a determination by the Commissioner must contain "a sufficient explanation of his reasoning to permit the reviewing court to judge the adequacy of his conclusions." *Rivera v. Sullivan,* 771 F.Supp. 1339, 1354 (S.D.N.Y.1991).

■ The record does contain some conflicting evidence but the ALJ has failed to set forth the reasons why he rejected very substantial evidence to support a finding of a moderate impairment in both the 'cognitive' function and the 'concentration' function. Some of the evidence that was not discussed supports a finding of moderate impairment in both areas. Of course, under the Regulations, if the ALJ found a moderate impairment in two other domains, then Yaritza would be deemed to be disabled. Therefore, an explanation for the ALJ's rejection of some of the highly probative evidence is crucial.

In particular, with respect to the 'cognitive' function domain, the record contains three IFA form reports, prepared by three sepa-

---

**2.** An additional basis for the plaintiff's application for SSI benefits was that Yaritza suffers from a hyperthyroid condition. The ALJ determined that this condition was under control and

could not constitute the basis for any finding of disability. The parties do not dispute this determination.

rate state appointed psychologists, in January 1992, November 1992, and February 1993. Tr. at 265, 313, 317.[3] These reports are specifically set up to reflect an evaluation of the 6 IFA domains. The reviewing psychologist must check off the degree of impairment (if any) in each of the domains.

All three reviewing psychologists specifically found that Yaritza was moderately impaired in the 'cognitive' function domain. *See* Tr. at 265, 313, 317. The ALJ, however, found less than moderate impairment in this domain, without any discussion or explanation as to why he rejected the findings of the three psychologists.

The ALJ cites to the reports of a "consulting psychologist," Dr. Stephen Gerencsen, who evaluated Yaritza in December 1990 and in October 1991. Tr. at 256, 259. In his first evaluation, Gerencsen reported a verbal IQ of 75 and a "full IQ" score of 85—both of which placed Yaritza at "borderline between Slow Learner and Mild Retardation." Tr. at 257. Nonetheless, Gerencsen concluded in his second evaluation that Yaritza is "not defective" and that "[classifying] her as learning disabled [would be] a mistake." Tr. 260. Gerencsen, however, does not expressly discuss the six domains or any findings relative thereto.

The Gerencsen report is obviously of some value. However, there is no indication in the record that Gerenscen's evaluation of Yaritza was more extensive or otherwise superior to that of the three state-appointed psychologists. Nor is there any indication that Dr. Gerencsen had treated Yaritza for an extended period of time. Thus it is unclear why the ALJ considered parts of the Gerenscen report, while excluding consideration of the reports by the other psychologists—whose reports were specifically designed to address the specific domains mandated in the IFA.

Further, there is substantial evidence in the record that Yaritza's cognitive abilities (*i.e.*, her ability to progress in applying the skills involved in reading, writing and mathematics—*see* 20 C.F.R. § 416.924d(h)(1)) are well below what they should be.

The record is replete with school and teacher reports. A letter from Yaritza's special education teacher dated March 28, 1994, indicates that while Yaritza is "chronologically" a 6th grader, she "is functioning on a 3rd grade level in both reading and mathematics." Tr. at 350.

School reports in 1989 rank her development in language and written communication skills as "minimal" (on a scale providing the following categories: "none, "minimal," "developing," "ability appropriate," and "above average"). Tr. at 188. These rankings persisted in 1990, when her development was ranked as minimal in most areas of Reading (decoding and comprehension) and Written Expression. Tr. at 232. Although her development in Written Expression improved in the 1991 evaluation, her Reading development (decoding and comprehension) remained "minimal." Tr. at 238. None of this evidence was discussed or explained by the ALJ.

Similarly, the ALJ did not address with specificity his findings of less than moderate impairment in the 'concentration' function domain. Again, the IFA reports prepared by agency-appointed psychologists are noteworthy. In two of the three, the reviewing psychologist found that Yaritza was moderately impaired in this domain. Tr. at 314, 318. The ALJ did not explain his reasons for ignoring this evidence.

There is additional evidence in the record that Yaritza's concentration, persistence and pace (her ability to engage in an activity, such as playing or reading, for the period of time and at the pace appropriate for her age—*see* 20 C.F.R. § 416.924d(h)(6)) are well behind where they should be. Her special education teacher noted that, while Yaritza "is able to concentrate on an assigned paper and pencil task ... she has difficulty concentrating when oral direction are given. She appears to 'daydream' and afterwards need prompts to return to the task." Tr. at 352.

**3.** References to the "Tr." are to the transcript of the entire record of the proceedings, submitted before this Court.

A 1989 school report describes Yaritza's behavior as follows: "Unable to work independently, difficulty following directions, short attention span, easily distracted." Tr. at 203.

And while psychologist Gerencsen found in conclusory fashion that Yaritza was "able to pay attention, concentrate, follow simple directions," Tr. at 258, 260, the ALJ does not explain his decision to discount the considerable conflicting evidence. This shortcoming renders the ALJ's determination unsupported by the evidence.

While none of the IFA reviewing psychologists concluded that, overall, Yaritza has an impairment comparable in severity to one that would disable an adult,—it is noteworthy that none found moderate impairment in the 'communicative' function category. This is the only domain in which the ALJ found moderate impairment. And because he did (and the Commissioner does not dispute that finding), a finding of moderate impairment in the other two domains ('cognitive' and 'concentration') would qualify Yaritza for SSI disability benefits.

In this case, analysis of the IFA is crucial since that analysis will determine whether Yaritza is disabled. As discussed, it is very difficult to analyze the ALJ's decision since he failed to discuss the six domains separately and failed to state reasons for his conclusions with respect to each domain. Separate findings should be made concerning each domain because the Regulations require a finding of disability if it is determined that the child has a moderate impairment in at least three of the six domains. Therefore, it is imperative that the ALJ conduct a focused analysis on each of the six domains, and especially in this case relative to the 'cognitive' domain and the 'concentration' domain in view of the substantial medical evidence which would seem to support a finding of moderate impairment in those domains.

### CONCLUSION

For all the above reasons, the Commissioner's motion for judgment on the pleadings (# 6) is DENIED. This matter is remanded for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**