Daniel J. **SCHAAL**, Plaintiff,

v.

John J. **CALLAHAN**,[1] Acting Commissioner of Social Security, Defendant.

No. 3:95CV2568 (RNC).

United States District Court, D. Connecticut.

Sept. 29, 1997.

---

1. Effective March 1, 1997, President Clinton appointed John J. Callahan to serve as Acting Commissioner of Social Security, to succeed Shirley S. Chater. Pursuant to Rule 25(d)(1), Fed.R.Civ. P., the court substitutes John J. Callahan for the Secretary of Health and Human Services as defendant in this action. Although the court has substituted the Acting Commissioner of Social Security for the Secretary of Health and Human Services in the caption, it continues to refer to the Secretary in the text because she was the appropriate party at the time of the underlying decision.

Philip Nelson Walker, Rogers and Vincenti, New Hartford, CT, for Plaintiff.

Deirdre Anne Martini, Bridgeport, CT, for Defendant.

CHATIGNY, District Judge.

After review and absent objection, the Magistrate Judge's recommended ruling is hereby approved and adopted.

So Ordered.

### RECOMMENDED RULING ON PLAINTIFF'S MOTIONS FOR JUDGMENT ON THE PLEADINGS AND DEFENDANT'S MOTION FOR ORDER AFFIRMING THE DECISION OF THE COMMISSIONER

MARTINEZ, United States Magistrate Judge.

The plaintiff, Daniel J. Schaal, filed this action seeking review, pursuant to 42 U.S.C. § 405(g), of the decision of the Secretary denying his claim for disability insurance benefits under the Social Security Act. The defendant moved for an order affirming the decision of the Secretary. In response to the defendant's motion, the plaintiff filed two motions [2] for judgment on the pleadings in which he seeks an immediate award of benefits or a remand for further proceedings. For the reasons that follow, the court recommends that the plaintiffs motions be granted to the extent that the case is remanded for further proceedings and the defendant's motion be denied.

### BACKGROUND

The plaintiff was born on March 14, 1951. (R. 60, 118).[3] He has a college degree in business administration and has earned 39

---

**2.** The plaintiff filed his first motion on January 25, 1997 and his second motion on January 30, 1997. There is no textual difference between the two motions. The only differences are changes in line spacing and the deletion of page numbers. Thus, the court considers both motions together.

**3.** The administrative record filed by the Secretary shall be referred to as "R.".

credits toward an M.B.A. (R. 61, 174, 203). The plaintiff currently volunteers at a coffee and bagel stand in the West Hartford town hall for two hours per day, three days per week. (R. 62, 74). His last employment was as a hotel desk clerk. (R. 62, 71, 230). He also has worked as a bottle return clerk, a waiter/restaurant worker and a valet parking attendant. (R. 62, 71–72, 174, 230). The plaintiffs period of insured status for Title II purposes expired on June 30, 1996. (R. 160). The plaintiff states that he became disabled on May 30, 1991, and claims that he is entitled to disability benefits because of a schizoaffective disorder. (R. 118, 170).

The plaintiff filed applications for supplemental security income benefits [4] and disability insurance benefits on November 12, 1992.[5] (R. 4, 118–20). The applications were denied on January 20, 1993. (R. 4, 127–29). In response to the plaintiffs February 3, 1993 request for reconsideration, (R. 130), the agency, on February 23, 1993, issued notices of reconsideration upholding the denial of benefits. (R. 4, 146–49). The hearing before the administrative law judge ("ALJ") was held on July 28, 1994. (R. 57–95). The plaintiff appeared with counsel at the hearing. (R. 59).

The plaintiff testified that for about five years he has not been able to concentrate long enough to "stay at" whatever he is doing. (R. 63). Although he suffers from asthma which is worse in hot weather, he has no disabling physical impairments. (R. 63–64). The plaintiff lives with his parents and receives public assistance. (R. 64). He consults the town social worker, who supervises his volunteer job, once a month for counseling. (Id.). The plaintiff also attends weekly sessions with a therapist who has been treating him for three or four years. (R. 64–65).

The plaintiff testified that he experiences no problems with physical functioning. (R. 65). Before the onset of his impairment, the plaintiff lifted weights and ran approximately

40 miles per week. He currently walks between 15 and 20 miles per week. (R. 65). His activities include going to the bookstore, reading books and newspapers, meeting a few friends for coffee and attending weekly church services. (R. 66–67, 68–69). The plaintiff dresses himself, makes his bed and cleans his room. (R. 67). His mother does the laundry and most of the cooking. The plaintiff cooks once or twice a week. (R. 68). The plaintiff stated that he sleeps from about 9:00 p.m. until 2:00 a.m. and then lies awake in bed until 6:00 a.m. He also takes a two or three hour nap in the afternoon. (Id.).

The plaintiff testified that he was "let go" from his last job as a hotel desk clerk because he could not operate the computer and automatic cash machine. (R. 71). He did not have any disagreement with his supervisor. (Id.). The plaintiff stated that he was fired from his job as a valet parking attendant because he "screeched the tires" on the sand. (Id.). He also stated that he could do all aspects of the job except waiting for people to "show up" because he found standing still and waiting to be difficult. (R. 71–72). The plaintiff said that he required a job with constant movement and constant variety. (R. 72).

The plaintiff also worked as a bottle return clerk for approximately eighteen months. He stated that his job performance was never criticized. (R. 72–73). He quit this job because he did not like the night manager. (R. 72). The plaintiff stated that the night manager and he had different attitudes toward women. When the night manager would not accept his view, the plaintiff quit. (R. 73–74). The plaintiff also testified that the night manager was always "pushing [him] around" and telling him what to do. (R. 72).

The plaintiff now volunteers two hours per day, three days per week, selling coffee and bagels in the West Hartford town hall. (R.

---

4. Because the plaintiff is appealing only the denial of disability income benefits, the documents relating to the plaintiff's application for supplemental security income benefits are not included in the record. (R. 4).

5. The plaintiff had previously filed an application for disability insurance benefits on March 2, 1990 alleging an onset date of February 7, 1990. This application was denied on May 12, 1990. The plaintiff did not appeal the denial of the 1990 application. (R. 96–117).

74). The plaintiff described his duties as sitting behind a desk, helping customers, making change, keeping records of sales, getting supplies from the storage area, organizing and sweeping the storage area and going to the store to buy supplies. (*Id.*). The ALJ also heard testimony from the town social worker who supervises the plaintiff in the volunteer position. (R. 75–91). The social worker stated that the plaintiff "generally performs well the time he is at the town hall." (R. 76). He noted, however, that the plaintiff frequently leaves from fifteen to thirty minutes early because he is restless. (R. 75–76). Although generally good at following instructions, the plaintiff does a cursory job when asked to clean the facilities and his hands always appear dirty. (R. 77). The plaintiff is friendly and presents himself well, but exhibits anxiety-related behaviors. (R. 78). He will not sit down and has little interaction with customers. (*Id.*) The plaintiff often experiences an anxiety attack and will refuse to go to the shop across the street from the town hall for supplies. (R. 79). As another example of anxiety-related behavior, the social worker noted that when the plaintiff arrives for his monthly counseling session, the plaintiff will not sit in the waiting room. Instead he leaves his name and stands out in the main lobby until his appointment. (R. 78).

The social worker offered an opinion, based upon his daily observations as the plaintiffs supervisor, regarding the plaintiffs ability to engage in substantial gainful activity. (*Id.*). The social worker stated that the plaintiff appears to respond well to criticism, but does not, or cannot, take the initiative to change the behavior that generated the criticism. He cannot carry out tasks without excessive supervision. (R. 79–80). When the plaintiff works alone, the work is "sloppy." (R. 80). The social worker concluded that the plaintiff could not successfully perform the volunteer job without supervision. (R. 80, 82). The plaintiff cannot make simple work-related decisions and prefers to let his coworkers deal with the public. (R. 82). Thus, the social worker opined that the plaintiff cannot make a transition to regular employment in a competitive environment because he cannot concentrate long enough,

follow through on slightly complicated directions or make immediate decisions. (R. 84).

The ALJ also had the personal data questionnaire completed by the plaintiff in November 1992, the daily activities questionnaire completed by the plaintiff in October 1995, and undated activities questionnaires completed by the plaintiffs parents. The plaintiff stated in November 1992, that he had no trouble sleeping at night but required more rest so he took an afternoon nap lasting from two to five hours. (R. 178). He needed no help grooming or caring for his personal needs. (*Id.*). He helped his mother with food preparation and setting the table, and washed the dishes. (*Id.*) He made his bed and cleaned and organized his room daily. He also helped with weekly housecleaning. (R. 179). In addition, the plaintiff raked leaves and cleaned the cellar and garage. (*Id.*). He shopped for clothes or food every three weeks. (*Id.*). The plaintiff read newspapers, magazines and the Bible. He watched television about three hours per day. (R. 180). His interests included walking, weight lifting, basketball, craft fairs and flea markets. (*Id.*). He visited his sister every two or three weeks. A typical visit lasted approximately three hours. (*Id.*). The plaintiff reported that he could concentrate and work for long periods of time. (R. 181).

In the 1995 questionnaire, the plaintiff reported that he performs household chores including: washing dishes, laundry, cleaning and organizing his room, raking leaves and shoveling snow. (R. 226). He walks between fifteen and twenty miles per week, attends weekly mass and enjoys going to flea markets. (*Id.*). He cooks for himself once or twice each week (but is not permitted to use the stove) and cares for his personal needs without assistance. (R. 226–27). He reads up to two hours per day and watches television or listens to the radio for between three and four hours per day. (R. 227). Although the plaintiff does not drive, he is able to use public transportation. (R. 228).

The plaintiff's father reported that except for meals the plaintiff spends most of his time alone. (R. 215). Although the plaintiff

used to enjoy basketball and baseball, now he just walks. (*Id.*) The plaintiff has almost no social contact outside of his family and seldom shops. He engages in conversations with his mother and nieces but does not like questions. (R. 216). The plaintiff seldom communicates his feelings to his father, preferring to speak to his mother. He does not like to be criticized or repeatedly told what to do. (R. 217). Although the plaintiff washes dishes and cuts the lawn, usually he cannot finish alone. When he does complete a task, however, he takes about the same time as a "normal person." (*Id.*). The plaintiff must be watched as he will not change his clothes or bathe without coaxing. (R. 218). Occasionally the plaintiff experiences sleeplessness. (R. 219).

The plaintiff's mother stated that although the plaintiff spends some time alone, he watches television with the family after dinner. He likes gatherings and will go to movies or concerts if his parents provide the necessary money. (R. 220). She describes the plaintiff as shy and polite, a person trying to be accepted. (R. 221). The plaintiff enjoys shopping, especially in bookstores. He has no difficulty asking questions or speaking his mind, although he will speak rapidly when he is upset. (*Id.*). The plaintiff does not like anyone to show disrespect. (R. 222). Because the plaintiff sometimes appears not to hear when he is corrected, his mother will stress certain points in her instructions to ensure that he understands what is expected. (*Id.*). The plaintiffs mother said that she seldom redoes the plaintiffs chores. The plaintiff can dress himself appropriately, although he sometimes asks her opinion about clothing choices. (R. 223). He can prepare his own breakfast and lunch and will prepare dinner if she is not at home. (*Id.*). The plaintiff generally knows what his mother expects from him. He will perform errands if he can walk to the store and purchases the specified items if he has been given careful instruction. (R. 223–24). The plaintiff has no difficulty sleeping. (R. 224).

The ALJ had before him reports of psychological evaluations and treatment covering the period from 1983 through the time of the hearing. A summary of the evidence follows.

Between August 8, 1983 and September 9, 1983, the plaintiff received inpatient treatment at the Cedarcrest Regional Hospital in Newington, Connecticut. (R. 194–200). He was diagnosed as suffering from a schizoaffective disorder.[6] (R. 195). Upon discharge, the plaintiffs condition was improved. He displayed no evidence of psychotic disorganization, denied auditory or visual hallucinations, better understood his problem and agreed to comply with treatment. (*Id.*). The discharge prognosis was good provided the plaintiff continue his medications. He would be able to live independently and resume caring for himself. (*Id.*). The plaintiff was readmitted to Cedarcrest from September 25, 1985 through October 11, 1985. (R. 201–06). After his auditory hallucinations and insomnia had resolved with treatment, the plaintiff was discharged to be followed at the Hartford Hospital Outpatient Psychiatric Clinic. (R. 201–02).

The plaintiff has been treated in group therapy since 1983. (R. 190, 193). In an April 1990 letter to the Department of Income Maintenance, the treating psychologist noted that the plaintiff has been diagnosed as a paranoid schizophrenic or as evidencing a schizoaffective disorder. (R. 190). The psychologist stated that the plaintiff had not been hospitalized since 1983. (*Id.*). Although the treating psychologist professed no detailed knowledge of the plaintiffs work history, he opined that the plaintiff was not disabled from working because he had worked at least intermittently before and at the time of the letter. (*Id.*). In a November 1992 letter to the Social Security Administration, the treating psychologist agreed with the plaintiff's assessment that the plaintiffs problem is finding the right job, not being

6. A schizoaffective disorder is a psychological disorder in which the patient exhibits symptoms of schizophrenia and affective, or mood, disorder. Schizophrenia is a term used to refer to a collection of disorders of perception, thought content and thought processes often accompa-nied by hallucinations and delusions. Schizophrenia is often characterized by extensive withdrawal from other people and the outside world. Stedman's Medical Dictionary 1578, 1579 (26th ed.1995).

able to work. (R. 193). The plaintiff thought he would work best either alone or in a "friendly environment." (*Id.*). The treating psychologist noted that the plaintiff's work history and intelligence indicate that the plaintiff is not disabled and that there is a range of work that the plaintiff could do. (*Id.*).

The plaintiff was also examined by a second psychologist in January 1992. (R. 191–92). The examining psychologist noted that the plaintiff was cooperative and pleasant during the evaluation. (R. 192). The examining psychologist reported that the plaintiffs thought processes were moderately confused; at times, the plaintiff was illogical and overly abstract. Although his speech was somewhat rapid, the plaintiff exhibited no bizarre ideation. (*Id.*). A mental examination indicated that the plaintiff has problems with attention and concentration. (*Id.*). The examining psychologist indicted that the plaintiffs current symptomatology, which included feelings of being watched and being manipulated by his parents, and the psychologist's personal observations support the diagnosis of schizoaffective disorder. (R. 191–92). The examining psychologist noted that the plaintiff exhibited no overt signs of psychosis and appeared to be functioning quite well considering his disability. He opined that the plaintiff should be able to perform routine or repetitive tasks, remember instructions and get along with people without difficulty. Although the plaintiff was somewhat paranoid and his behavior might appear strange to others, the plaintiffs "unusual thought processes" did not interfere with his ability to get along with others. (R 192).

In May 1994, at the request of the agency, the plaintiff underwent a consultative psychological examination. (R. 211–14). The consultative psychologist noted that the plaintiff's major problem was a possible thought disorder. He also reported a bipolar disorder and anorexia. (R. 211). During the examination, the plaintiff was anxious. His thought processes, however, appeared coherent and logical with no evidence of delusions, compulsions or obsessions. His attention and concentration were within normal limits. (*Id.*). The consultative psychologist administered the Weschler Adult Intelligence Scale—Revised. (R. 212). Overall, the plaintiff's intelligence was in the low-average range. He was in the high-average range in areas of factual knowledge from experience and education and arithmetic reasoning; the low-average range for word knowledge and verbal concept formation; and the poor range for rote and immediate memory, understanding social situations and abstract thinking abilities. (*Id.*). On the performance scale, the plaintiff was in the low-average range for analysis, formation of abstract designs, non-verbal problem solving and perceptual-motor speed coordination. He was in the poor range for visual memory, attention to detail and sequencing ability. (R. 213). The test revealed an overall defensive and evasive attitude with a propensity to act out thoughts and feelings. (*Id.*).

The consultative psychologist described the plaintiff emotionally as exhibiting some symptoms of depression and anxiety but fairly stable regarding the bipolar disorder because of his medication. He noted that the plaintiff has given up on himself and the possibility of finding employment because of his depression. (R. 214). The consultative psychologist's final diagnosis was recurrent major depression and bipolar disorder in remission. (*Id.*).

As part of the initial review of the plaintiffs claim, the agency completed a mental residual functional capacity assessment. (R. 123–25). The reviewer accepted the plaintiff's assertion that he could work with qualifications: the plaintiff's poor concentration would lead to occasional problems in attempting to consolidate detailed instructions, problems with sustained concentration and occasional problems with his supervisor. (R. 125). In February 1993, in conjunction with its reconsideration, the agency prepared a psychiatric review technique form and a vocational analysis. (R. 133–41, 143–45). The plaintiff was evaluated for a schizoaffective disorder. (R. 133). The reviewer noted that the plaintiff exhibited no restriction of activities of daily living, experienced moderate difficulty maintaining social functioning, often demonstrated deficiencies of concentration, persistence and pace, and never exhibited

episodes of decompensation or deterioration in ·work or work-like settings. (R. 140). Thus, the plaintiff failed to exhibit functional limitations to the extent required to satisfy the listing for schizoaffective disorders. (*Id.*). The vocational analysis revealed that the plaintiff can remember short, simple instructions and work-like procedures. (R. 143). He can perform scheduled activities, work with others and make simple, work-related decisions. (*Id.*). The plaintiff can complete a normal work day and work week without interruptions. (*Id.*). The reviewer noted, however, that the plaintiff is moderately disabled in the following ways: he is unable to carry out detailed instructions and maintain concentration for extended periods of time; and he cannot accept responsibility and respond appropriately to criticism. (R. 144).

On January 21, 1995, the plaintiff filed a request for review by the Appeals Council. (R. 36–37). On October 5, 1995, the Appeals Council denied the request for review. (R. 5–6). The plaintiff then timely filed this appeal within the sixty day period following receipt of the decision of the Appeals Council. In this action, the plaintiff appeals the denial of disability insurance benefits only. On January 8, 1997, the defendant filed a Motion for Order Affirming the Decision of the Commissioner. In response, on January 25, 1997 and January 30, 1997, the plaintiff filed Motions for Judgment on the Pleadings. The parties' motions are pending before the court.

## STANDARD OF REVIEW

The scope of review of a social security disability determination involves two levels of inquiry. The court must first decide whether the Secretary applied the correct legal principles in making the determination. Next, the court must decide whether the determination is supported by substantial evidence. *Johnson v. Bowen,* 817 F.2d 983, 985 (2d Cir.1987). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it ·is· more than a "mere scintilla." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The substantial evidence rule also applies to inferences and conclusions that are drawn from findings of fact. *Rodriguez v. Califano,* 431 F.Supp. 421, 423 (S.D.N.Y.1977). The court may not decide facts, reweigh evidence or substitute its judgment for that of the Secretary. *Dotson v. Shalala,* 1 F.3d 571, 577 (7th Cir.1993); *Reyes v. Harris,* 486 F.Supp. 1063, 1067 (S.D.N.Y.1980). The court must scrutinize the entire record to determine the reasonableness of the ALJ's factual findings. Furthermore, "[w]hen there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson v. Bowen,* 817 F.2d at 986.

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. § 423(a)(1). "Disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."· 42 U.S.C. § 423(d)(1).

Determining whether a claimant is disabled requires a five-step process. 20 C.F.R. § 404.1520. First, the court must determine whether the claimant is currently working. 20 C.F.R. § 404.1510(b), 404.1572(b). If the claimant is· currently employed, the claim is disallowed. 20 C.F.R. § 404.1520(b). If the claimant is not working, as a second step, the agency must make a finding as to the existence of a severe mental or physical impairment; if none exists, the claim is denied. 20 C.F.R.· § 404.1520(c). Once the claimant is found to have a severe impairment, the third step is to compare the claimant's impairment with those in appendix I of the regulations (the "Listings"). 20 C.F.R. § 404.1520(d); *Bowen v. Yuckert,* 482 U.S. 137, 141, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). If the claimant's impairment meets or equals one of the impairments in the Listings, the claimant is automatically considered disabled. 20

C.F.R. § 404.1520(d); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.1982). If the claimant's impairment does not meet or equal one of the listed impairments, as a fourth step, he will have to show that he cannot perform his former work. 20 C.F.R. § 404.1520(e). If the claimant cannot perform his former work, he must show, as a fifth and final step, that he is prevented from doing any other work. A claimant is entitled to receive disability benefits only if he cannot perform any alternate gainful employment. 20 C.F.R. § 404.1520(f).

The initial burden of establishing disability is on the claimant. 42 U.S.C. § 423(d)(5). Once the claimant demonstrates that he is incapable of performing his past work, however, the burden shifts to the Secretary to show that the claimant has the residual functional capacity to perform other substantial gainful activity in the national economy. *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir.1980). This may require the application of the Medical–Vocational Guidelines ("the grid") which places claimants with severe exertional impairments who can no longer perform past work into grid categories according to their residual functional capacity, age, education and work experience, and dictates a conclusion of disabled or not disabled. 20 C.F.R. § 404.1520(f). A proper application of the grid makes vocational testing unnecessary.

The grid covers only exertional impairments; nonexertional impairments, including psychiatric disorders are not covered. 20 C.F.R. Pt. 220(e)(2). If the grid cannot be used, i.e., when nonexertional impairments are present or when exertional impairments do not fit squarely within grid categories, the testimony of a vocational expert is generally required to support a finding of residual functional capacity for substantial gainful activity. *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir.1986).

## DISCUSSION

Following the five step evaluation process, the ALJ determined that the plaintiff has not engaged in substantial gainful activity since May 30, 1991. (R. 44). Although the plaintiff presented medical evidence that he suffers from a severe psychiatric impairment, the ALJ found that the plaintiff suffers from no impairment or combination of impairments that meet or equal any listed impairment. (R. 42, 44). The ALJ found the testimony of the plaintiff and his social worker contradictory and determined that the testimony did not establish that the plaintiff "experiences severe, disabling anxiety and depression or that he would be unable to respond appropriately to customary work pressures." (R. 44). The ALJ determined that the plaintiff retained the residual functional capacity to perform his past work as a bottle return clerk and, therefore, was not disabled at any time through the date of decision. (*Id.*). The ALJ also completed a psychiatric review technique form. (R. 46–48). The ALJ determined that the plaintiff displayed evidence of schizoaffective disorder. (R. 47). In evaluating the severity of the plaintiffs impairment, the ALJ determined that the plaintiff exhibited no restrictions on activities of daily living and slight difficulty maintaining social functioning. He seldom demonstrated deficiencies of concentration, persistence or pace which resulted in failure to complete assigned tasks in a timely manner, and never exhibited episodes of deterioration or decompensation in work or work-like settings which caused him to withdraw from the situation or to experience an exacerbation of symptoms. (R. 48). Thus, the ALJ determined that the plaintiff failed to meet the listing requirements for schizoaffective disorder. (*Id.*).

The plaintiff advances two arguments in support of his motions for judgment on the pleadings: (1) the ALJ's decision that the plaintiffs impairment does not satisfy the listing requirements is not supported by substantial evidence because the ALJ failed to consider the nonmedical evidence of the plaintiffs functional limitations; and (2) the record compels a finding that the plaintiff is disabled without remanding the case for further proceedings. The defendant argues that the plaintiff failed to meet his burden of demonstrating that his impairments satisfy the listing requirements or that he cannot perform his past relevant work.

## I. Severity of the Plaintiff's Impairment

The plaintiff first argues that the ALJ's finding that the plaintiffs impairment was not of listing severity is not supported by substantial evidence. More specifically, the plaintiff contends that the ALJ failed to consider the non-medical evidence of functional limitations and failed to comply with the requirements of Social Security Ruling ("SSR") 85–16 in that he did not explain his rejection of this evidence. The plaintiff also contends that his impairment satisfies the listing requirements for schizoaffective disorders.

### A. Application of SSR 85–16

The determination that a claimant is disabled by a mental impairment is a two-step process. First, the ALJ must decide whether a mental impairment exists. He does this by reviewing the record to determine whether there is any evidence of signs, symptoms, findings, functional limitations or treatments indicating a mental impairment. 20 C.F.R. § 416.920a(b). In the present case, the ALJ determined that the plaintiff suffers from a severe impairment, namely schizoaffective disorder. (R. 44, 46–47).

Second, the ALJ must examine the four areas of activity considered to be essential to the ability to work to determine what degree of functional loss is attributable to the mental impairment. 20 C.F.R. § 416.920a(b)(3). These four areas of activity are: activities of daily living; social functioning; concentration, persistence or pace; and deterioration or decompensation in work or work-like settings. Id. In the present case, the ALJ determined that the plaintiff exhibited no restrictions on activities of daily living, demonstrated slight difficulty maintaining social functioning, seldom experienced deficiencies of concentration, persistence or pace which resulted in failure to complete assigned tasks in a timely manner, and never exhibited episodes of deterioration or decompensation in work or work-like settings which caused him to withdraw from the situation or to experience an exacerbation of symptoms. (R. 48). Thus, the ALJ determined that the plaintiff did not demonstrate functional limitations of the severity required to satisfy the listing requirements for schizoaffective disorder. (Id.).

SSR 85–16 explains the importance of a residual functional capacity assessment for individuals whose mental impairments are severe but do not meet the listing requirements. The evaluation of residual functional capacity in persons suffering from mental disorders "includes consideration of the ability to understand, to carry out and remember instructions, and to respond appropriately to supervision, coworkers, and customary work pressures in a work setting." SSR 85–16, 1985 WL 56855, at *1 (S.S.A.). Evidence helpful in making this determination includes:

History, findings, and observations from medical sources (including psychological test results), regarding the presence, frequency, and intensity of hallucinations, delusions or paranoid tendencies; depression or elation; confusion or disorientation; conversion symptoms or phobias; psychophysiological symptoms; withdrawn or bizarre behavior; anxiety or tension.

Reports of the individual's activities of daily living and work activity, as well as testimony of third parties about the individual's performance and behavior.

\* \* \*

Quality of daily activities, both in occupational and social spheres. . . .

Ability to sustain activities, interests, and relate to others over a period of time. The frequency, appropriateness, and independence of the activities must also be considered. . . .

Level of intellectual functioning.

Ability to function in a work-like situation.

Id. at *2.

Under SSR 85–16, the ALJ bears the responsibility "to identify the pertinent evidence from medical and nonmedical reports and to make findings as to the individual's ability to perform work-related activities." Id. Non-medical evidence may be "vital" in assessing the functional limitations of a mental impairment. Id. at *4. Non-medical sources specifically mentioned in the ruling

include social workers and family members. In addition, "[i]nformation concerning an individual's performance in any work setting (including sheltered work and volunteer or competitive work)· . . . may be pertinent in assessing the individual's ability to function in a competitive work environment." *Id.* If the conclusion based upon an evaluation of sheltered work differs from that based upon medical evidence, the difference must be resolved. The ALJ's decision must explain the reason for rejecting one evaluation and accepting the other. *Id.*

In the present case, the ALJ recounted all of the record medical evidence in his decision. But the ALJ failed to even mention the activities questionnaires completed by the plaintiffs parents and only briefly mentioned the social worker's testimony. (R. 42–44). Although the ALJ professes to have applied SSR 85–16 in evaluating the plaintiffs testimony, the ALJ provides no resolution of the discrepancies between the plaintiffs testimony and that of the social worker, or of the difference in the assessments of the plaintiffs ability to maintain employment provided by the social worker and psychologists. Thus, the ALJ has failed to comply with the requirements of SSR 85–16. Upon remand, the ALJ is directed to perform the analysis contemplated by SSR 85–16. He shall consider the social worker's assessment of the plaintiffs work ability, resolve any discrepancies in the evidence of the plaintiffs functional abilities and explain the reasoning which underlies his determination.

### B. *Ability to Perform Past Work*

■ In his decision, the ALJ states that the vocational expert "testified that the claimant's past relevant work as a bottle return clerk involves light exertion and is unskilled. This position requires average intelligence, motor coordination, and finger and manual dexterity." (R. 44). Based upon this assessment, the ALJ found that the plaintiff could perform his past relevant work as a bottle return clerk. (*Id.*). A review of the hearing transcript, however, reveals that, although a vocational expert was present at the hearing, the ALJ obtained no testimony from him. (R. 93–94).

Before determining that the plaintiff can perform his past work, the ALJ must review the plaintiffs residual functional capacity and the physical and mental requirements of the plaintiffs past employment. *Welch v. Chater,* 923 F.Supp. 17, 20 (W.D.N.Y.1996) (citing 20 C.F.R. §§ 404.1520(e), 416.920(e)). "When the plaintiffs impairment is a mental one, special care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety . . . in order to determine if the claimant's mental impairment is compatible with the performance of such work." *Id.* (internal quotation marks and citation omitted).

In the present case, although the ALJ refers to the vocational expert's description of the plaintiffs previous job, the vocational expert neither testified at the hearing nor provided any written assessment of the plaintiffs previous employment. Although the plaintiff testified about his job as a bottle return clerk, he only stated that he put bottles in boxes and stored them and that his work had not been criticized. (R. 72–73). Thus, the record does not include a description of the job duties and associated mental demands of the job that is sufficient to enable the court to review the ALJ's determination that the plaintiff can perform his past work.

To enable the court to properly review the Secretary's decision, the record must clearly state the rules being applied, the weight accorded the evidence and the reasoning underlying the decision. *Figueroa v. Chater,* 911 F.Supp. 98, 102 (W.D.N.Y.1996). *See Welch v. Chater,* 923 F.Supp. at 20–21 (remanding case for further proceedings where record lacked any comparison of claimant's prior work and current abilities). Upon remand the ALJ shall obtain evidence from a vocational expert.

### C. *Satisfaction of Listing Requirements*

■ The plaintiff contends that he is disabled because his functional limitations satisfy the listing requirements. To meet the listing requirements for functional limitations associated with schizoaffective disorder, a claimant must satisfy at least two functional limitations at the listing level. 20 C.F.R.Pt.

404, Subpt. P, App. 1 § 12.04. The listing levels are: marked restrictions of activities of daily living; marked difficulties in maintaining social functioning; frequent deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner; and repeated, i.e., three or more, episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms. 20 C.F.R. § 404.1520a. The record in the present case contains two psychiatric review forms, one completed at the time of the initial review of the plaintiffs claim and the other completed by the ALJ in conjunction with his decision. (R. 133–41, 46–48). Neither assessment rates even one functional limitation at the listing level.

The record evidence regarding the plaintiffs functional limitations is contradictory. For example, activities of daily living include "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for one's grooming and hygiene." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C(1). Neither assessment of the plaintiffs functional limitations found any restriction of activities of daily living. (R. 140, 48). The record indicates, however, that the plaintiff lives with his parents and is not permitted to use the stove or washing machine. (R. 64, 68, 227). The questionnaires completed by the plaintiffs parents contain very different views on the plaintiff's abilities. (R. 215–19, 220–24). These facts are not referenced in the ALJ's decision or his psychiatric assessment.

Concentration, persistence and pace refer to the ability to sustain focused attention sufficiently long to permit the timely completion of tasks commonly found in work settings. In activities of daily living, concentration may be reflected in terms of ability to complete tasks in everyday household routines. Deficiencies in concentration, persistence and pace are best observed in work and work-like settings. Major impairment in this area can often be assessed through direct psychiatric examination and/or psychological testing, although mental status examination or psychological test data alone should not be used to accurately describe concentration and sustained ability to adequately perform work-like tasks....

20 C.F.R.Pt. 404, Subpt. P, App. 1 § 12.00C(3). In the initial psychiatric review form, the frequency at which the plaintiff demonstrated deficiencies of concentration, persistence or pace was rated as often. (R. 140). The ALJ reduced the frequency rating to seldom. (R. 48). The court presumes that the ALJ based his assessment on the record evidence which included the social worker's testimony that the plaintiff could not perform the volunteer job without excessive supervision, that his independent work was "sloppy," and that he was too restless to stay at the job for the entire two hour period. (R. 75–84). The plaintiffs parents present conflicting views on the plaintiffs ability to complete household task and to perform them adequately. (R. 251–19, 220–24). In addition, the plaintiffs treating psychologist states that the plaintiff is able to work, but provides no test results to support this opinion. The consultative psychologist, however, administered tests and reported that the plaintiff scored poorly in the areas of rote and immediate memory, understanding social situation, abstract thinking abilities, attention to details and sequencing abilities. (R. 212–13). Although the ALJ refers to his decision for an analysis of this limitation, (R. 47), the decision fails to address all of this evidence and does not resolve the inconsistencies.

The evaluation of the evidence and resolution of any inconsistencies is exclusively the province of the Secretary. *Richardson v. Perales*, 402 U.S. at 400. When the ALJ does not set forth his evaluation of the evidence, the court cannot determine whether the decision is supported by substantial evidence. *Figueroa v. Chater*, 911 F.Supp. at 102 (citing *Ryan v. Heckler*, 762 F.2d 939, 941 (11th Cir.1985)). In the present case, the ALJ's decision fails to evaluate all the record evidence. Thus, the court is unable to determine that the plaintiff meets the listing requirements for schizoaffective disorder.

II. *Remand*

The plaintiff argues that the case should be remanded for the calculation of benefits

rather than for further administrative proceedings. Once the court determines that the Secretary's decision should be reversed because it is not supported by substantial evidence, the court must consider the underlying record to determine whether the remand should be for further administrative proceedings or the calculation of benefits. The Secretary's decision can be reversed and the court may make an immediate award of disability benefits "when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose." *Parker v. Harris,* 626 F.2d at 235. On the other hand, if the record permits a conclusion that plaintiff may or may not be disabled, the court should remand for a rehearing. *Rivera v. Sullivan,* 771 F.Supp. 1339, 1359 (S.D.N.Y.1991) (citing *Johnson v. Bowen,* 817 F.2d 983, 987 (2d Cir.1987); *Parker v. Harris,* 626 F.2d at 235).

In the present case, the plaintiff has presented medical assessments which indicate that he should be able to engage in substantial gainful activity and the testimony of his supervising social worker which indicates that he cannot function independently in a competitive employment situation. In addition, the record contains conflicting evidence regarding several of the functional limitations which must be satisfied before a determination of disability may be made. Because the ALJ has not evaluated all of the relevant evidence, the court cannot determine the plaintiffs entitlement to benefits on the face of the record. Thus, the case should be remanded for further administrative proceedings to enable the ALJ to properly evaluate the evidence of the plaintiffs functional limitations.

## CONCLUSION

For the reasons stated above, the defendant's Motion for Order Affirming the Decision of the Commissioner [doc. # 10] should be DENIED. The plaintiffs Motions for Judgment on the Pleadings [docs. # 13, 15] should be GRANTED. The decision of the Secretary should be reversed and the case remanded to the Commissioner for further proceedings consistent with this decision.

The parties are free to seek the district judge's review of this recommendation. *See* 28 U.S.C. § 636(b) (written objection to ruling must be filed within ten days after service of same); Fed.R.Civ.P. 6(a), 6(e) & 72; Rule 2 of the Local Rule for United States Magistrate Judges, United States District Court for the District of Connecticut; *Small v. Secretary of HHS,* 892 F.2d 15, 16 (2d Cir.1989) (failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).

Sept. 8, 1997.