**Josephine MARZILIANO, Plaintiff,**

v.

**Louis M. SULLIVAN, Secretary of the United States Department of Health and Human Services, Defendant.**

**No. 90 Civ. 5480 (GLG).**

United States District Court, S.D. New York.

July 24, 1991.

Westchester Legal Services, White Plains, N.Y. by Robert F. Graziano, for plaintiff.

Otto G. Obermaier, U.S. Atty., S.D.N.Y., New York City by Linda A. Riffkin, Sp. Asst. U.S. Atty., for defendant.

## MEMORANDUM DECISION

GOETTEL, District Judge.

Defendant has filed objections to the report and recommendation of the Hon. James C. Francis IV, United States Magistrate Judge, dated June 24, 1991. In this action, the plaintiff sought review of a determination by the defendant that denied her request to waive recovery of an overpayment of Supplemental Security Income benefits. The Magistrate Judge recommended that the matter be referred to the Secretary for a new hearing, giving the required deference to the treating physician's opinions in making the decision. De-

fendant objects to the application of the treating physician rule in overpayment waiver proceedings.

The 55 year old plaintiff has been afforded psychiatric treatment at two Westchester facilities since 1983. She has undergone numerous hospitalizations for mental illness. She became eligible for Supplemental Security Income benefits in 1974. Although the record does not disclose the illness that made her eligible, we assume it was connected with her psychiatric problems.

Despite her impairment, between 1974 and 1984, the plaintiff worked as a nurse's aide and did not report her earnings to the Social Security Administration. Consequently, defendant determined that she had been overpaid in the amount of $9,000. The administration then advised plaintiff that she could not earn money while collecting disability benefits and she stated that she understood this restriction. (That overpayment is not the subject of this proceeding.) Thereafter, she made numerous deposits and withdrawals of monies in bank accounts and mutual funds in amounts up to $10,000. Some of these accounts were joint with her children.

In November 1988, she was notified that she had been overpaid in excess of $13,000 in benefits because she had accumulated resources in excess of the amounts permitted by the Regulations (less than $2,000.). She then sought a waiver of the overpayment on grounds that she was without fault. When this application was denied, she requested an administrative hearing. At this hearing, she gave various excuses for her action, including the claim that the monies were not hers but were intended for the use of her children. While she acknowledged that she knew she could not work, she also contended that she believed the receipt of money from other sources and their retention was not improper.

To support plaintiff's claim of lack of understanding of the reporting requirements, she submitted a report from a psy-

chiatrist,[1] the essence of which was that she was not capable of understanding the consequences of saving money. Another report gave the opinion of a social worker that she did not fully understand the nature of the bank accounts set up by her husband for the benefit of her children.

The Administrative Law Judge declined to accept her explanation, specifically rejecting the claim that the monies were for the exclusive use of her children. The Administrative Law Judge also rejected the contention that she did not understand reporting responsibilities because of her mental condition, without commenting upon the medical evidence, but relying on her previous experiences with the Social Security Administration.

In recommending remand, the Magistrate Judge concluded that the Administrative Law Judge had failed to afford proper deference to the physician's report which violated the strong treating physician rule adopted by our Circuit Court. Defendant contends that the use of the treating physician rule in an overpayment matter is improper.

The treating physician rule, announced by the Second Circuit in *Schisler v. Heckler*, 787 F.2d 76 (2d Cir.1986), has been vigorously enforced and, indeed, expanded by the Second Circuit since that time. No reason is suggested for not using it in the context of an overpayment case, although admittedly there is no existing authority on this issue. We agree with the Magistrate Judge that

> ... an ALJ can no more substitute his or her own judgment for the treating physicians' in determining in an overpayment case whether a claimant had the capacity to understand the nature of the reporting requirements than he can in deciding whether a claimant's impairment is disabling. Thus, the treating physician rule applies with full force when determining

whether a claimant was "at fault" in accepting an overpayment.

Report at 11.

Moreover, the Second Circuit has been very lenient in accepting claims of mental impairment as excusing actions of Social Security recipients even when the claimed mental impairment is purportedly brought on by an adverse final decision of the Secretary. *See Canales v. Sullivan*, 936 F.2d 755 (2d Cir.1991).

We perceive an undue reaction by the defendant to the remand. The Magistrate Judge's recommendation does not suggest that because the evidence of the treating physicians must be granted deference that the plaintiff is perforce entitled to prevail. There are clearly non-medical factors to be considered in this matter and there is nothing in the report to suggest that they cannot be considered. The plaintiff's mental competency and understanding is not necessarily determinative on the question of the plaintiff's responsibility for adhering to the statutory resource limitations. Clearly, the totality of the circumstances are still open for consideration but the Administrative Law Judge cannot ignore the medical evidence. Consideration must be given to the opinion of the treating physician which can then be balanced against the other undisputed facts as to the actions of the claimant. Consequently, the Magistrate Judge's report and recommendation is adopted as the court's. The case will be remanded for a new hearing, to be conducted with deference to the treating physician's reports.

SO ORDERED.

## REPORT AND RECOMMENDATION

JAMES C. FRANCIS, IV, United States Magistrate Judge.

This action has been referred to me for a report and recommendation. Pursuant to

---

**1.** The psychiatrist's exact statement was that he was "quite sure that she did not understand the consequences of saving money or I am sure she would not have put it away." Report at 11. This statement is subject to the interpretation that the doctor believes that a more competent person would not have put the money in their own name thereby subjecting herself to a loss of benefits. If, however, the money was hers, her inadvertent exposure, even if caused by a lack of mental competency, does not prevent a conclusion that she exceeded the statutory resource limitations and, therefore, was not eligible for payments.

42 U.S.C. § 405(g), plaintiff Josephine Marziliano seeks review of a determination of the Secretary of the United States Department of Health and Human Services (the "Secretary") that denied her request to waive recovery of an overpayment of Supplemental Security Income ("SSI") benefits. For the reasons that follow, I recommend that the case be remanded to the Secretary for a new hearing consistent with this report.

*Background*

The plaintiff in this action, Josephine Marziliano, is a fifty-five year old woman of Italian background. From 1973 to May 1988, Mrs. Marziliano was in treatment at the Psychiatric Services Center in White Plains, New York. After that date she entered treatment at the New Rochelle Guidance Center. (Tr. 104).[1] Throughout her lifetime the plaintiff had undergone numerous hospitalizations for various mental illnesses. (Tr. 104).

Mrs. Marziliano became eligible for SSI benefits in January, 1974. (Tr. 13). Between 1974 and 1984, she worked as a nurse's aide, but failed to report her earnings to the Secretary. Because of her failure to report, the Secretary determined that Mrs. Marziliano was overpaid the sum of $9,000. (Tr. 28).[2] The Social Security Administration then advised Mrs. Marziliano that she could not earn money while collecting SSI benefits, and she stated that she understood the consequences of her actions. (Tr. 29).

In April 1984, Mrs. Marziliano deposited $9,555.93 in an account at the People's Savings Bank. The account was in her name and in trust for her son, Michael Marziliano. (Tr. 70–71). She withdrew $4,500 on June 25, 1984 and continued the withdrawals through July until $1,396.29 remained on July 9, 1984. (Tr. 70–71). On October 10, 1985, the plaintiff invested $8,000 in the Franklin New York Tax–Free Income Fund

(Franklin Fund). (Tr. 90). The account was in her own name. (Tr. 90). On April 29, 1988, she withdrew $4,000, which she redeposited on May 12, 1988. (Tr. 87). On July 6, 1988, she withdrew the entire outstanding balance of $10,017.55 and deposited the money in a checking account at the Tremont Federal Savings and Loan Association. (Tr. 91). This account was jointly held by Josephine Marziliano and her daughter Patricia Marziliano. (Tr. 91). Withdrawals were regularly made, and by October 4, 1988 only $1,569.47 remained in the account. (Tr. 93).

On November 17, 1988, Mrs. Marziliano was notified that she had been overpaid $13,414.74 in SSI benefits because she had accumulated resources in excess of the amounts permitted by 20 C.F.R. § 416.-1205.[3] (Tr. 37). The Social Security Administration denied her request for a waiver of the overpayment on the grounds that she was not "without fault" in accepting the money. (Tr. 63). Upon reconsideration, the amount of the overpayment was reduced to $13,031.42. (Tr. 65). Following the reconsideration, the plaintiff filed a request for a hearing before an administrative law judge ("ALJ"). (Tr. 67).

At the administrative hearing, Mrs. Marziliano claimed that she was "without fault" in accepting the money because it was to be used for the benefit of her children. (Tr. 22). She testified that the accounts were opened by her husband and that she merely supplied the signatures. (Tr. 23). She claimed that the $8,000 used to open the Franklin Fund account came from her father (Tr. 24), and stated that her husband told her it was alright to maintain her bank accounts. (Tr. 27).

The plaintiff told the ALJ that she did not realize that having money in the bank would affect her SSI benefits because she intended it to be used for the benefit of her children and it therefore "was not my mon-

---

1. "Tr." refers to the administrative record filed by the Secretary in this action.

2. The record does not disclose the particular impairment which made the plaintiff eligible for SSI payments. Nor are the specific dates of Mrs. Marziliano's employment revealed.

3. An individual is eligible for SSI benefits if that person has monthly resources of not more than $1,600 prior to Jan. 1, 1986, $1,700 prior to Jan. 1, 1987, $1,800 prior to Jan. 1, 1988 and $1,900 prior to Jan. 1, 1989.

ey". (Tr. 29). She knew that if she earned money working it would affect her benefits, but she believed this situation to be different because the money now at issue did not come from wages. (Tr. 29).

To support her position that she lacked understanding of the reporting requirements, Mrs. Marziliano submitted medical reports from two psychiatrists. (Tr. 104–7). In a report dated February 14, 1989, Dr. Charles M. Biller, her treating psychiatrist, stated that Mrs. Marziliano was not capable of understanding the consequences of her saving money. (Tr. 105). The second (undated) report by Dr. Neil E. Berliner of the New Rochelle Guidance Center stated that in the opinion of Mrs. Marziliano's social worker, Mrs. Marziliano did not fully understand the nature of the bank account set up by her husband for the benefit of her children. (Tr. 107).

The ALJ concluded that Mrs. Marziliano was not "without fault" in accepting the overpayment and that it should not be waived. (Tr. 15–16). The ALJ based his decision on the following observations:

In this regard, the record indicates that the claimant's prior overpayment of over $9,000.00 was caused by the receipt of an erroneous Title XVI payment which the claimant failed to refund but instead deposited in a trust account for her son. The resource requirements ... were explained to the claimant at that time and she subsequently did reduce her resources to below the allowable limit. Thus, when she opened her account at the Franklin New York Tax–Free Income Fund in October 1985, she should have been aware that this account would affect her supplemental security income eligibility. The undersigned does not accept the claimant's argument that these monies were for the exclusive use of her children and thus should not be considered a resource to her. In this regard, the record indicates that the claimant withdrew $4,000.00 from this account in April 1988 to be used for a trip to Italy. While the claimant later changed her mind and redeposited the money in May 1988, that does not change the fact that it was her intention to use these funds for her own purposes. Further, the claimant subsequently closed out her account with the Franklin Fund and deposited the entire amount ($10,017.55) into a joint checking account (with her daughter) at Tremont Federal Savings and Loan Association. The claimant subsequently submitted receipts to show how she reduced the monies in this account to below the allowable resource limits. It is apparent from these receipts that the money was not used solely for the children's benefit as claimed.

The undersigned also rejects the attorney's contention that the claimant did not understand her reporting responsibilities because of her mental condition. In this regard, while the undersigned is aware that the claimant has a history of mental impairment, the record indicates that the claimant has opened and closed several bank accounts. She appears to have understood the supplemental security income resource requirements since on two different occasions she spent down her resources to below the allowable limits to retain supplemental security income eligibility.

(Tr. 15–16). (Citations to exhibits omitted).

On March 12, 1990, Mrs. Marziliano requested that the Appeals Council review the decision of the ALJ. The Council denied review and stated that the ALJ adequately addressed the issue of whether the claimant understood her reporting requirements. (Tr. 5). Accordingly, the decision of the ALJ was adopted as the final decision of the Secretary.

The plaintiff brought this action on February 20, 1991, seeking review of the Secretary's determination pursuant to 42 U.S.C. § 405(g). She asks the Court to reverse the decision of the ALJ or, alternatively, to remand the matter to the Secretary for a new administrative hearing. Plaintiff's Notice of Motion for Judgment on the Pleadings. The Secretary has submitted a cross-motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

Mrs. Marziliano claims that in determining whether she was "without fault," the ALJ failed to consider all pertinent circumstances, as required by 20 C.F.R. § 416.-552, including the claimant's understanding of the reporting requirements, ability to comply with those requirements, and her physical and mental condition. Memorandum in Support of Plaintiff's Motion ("Plaintiff's Memo") at 6. The plaintiff also claims that the ALJ failed to accord proper deference to the opinion of Mrs. Marziliano's treating physicians in determining whether the claimant possessed the ability to understand the reporting requirements. Plaintiff's Memo at 11. She asserts that the ALJ ignored the reports of the treating psychiatrists and substituted his own judgment for theirs. Plaintiff's Memo at 13.

*Analytical Framework*

The factual findings of the Secretary shall be conclusive if supported by substantial evidence. *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir.1983); 42 U.S.C. sec. 405(g). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion". *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938)).

The Social Security Act authorizes the Secretary to recover overpayments erroneously disbursed. 42 U.S.C. § 1383(b)(1)(A). However, the Secretary may waive recovery of the overpayment if:

(a) The overpaid individual was without fault in connection with the overpayment, and

(b) Adjustment or recovery of such overpayment would either:

(1) Defeat the purpose of Title XVI, or

(2) Be against equity and good conscience, or

(3) Impede efficient or effective administration of Title XVI due to the small amount involved.

20 C.F.R. § 416.550; 42 U.S.C. § 1383(b)(1)(B).

In determining whether the recipient of an overpayment was without fault, the ALJ is required to consider:

the individual's understanding of the reporting requirements, the agreement to report events affecting payments, knowledge of the occurrence of events that should have been reported ... understanding of the obligation to return checks which were not due, and ability to comply with the reporting requirements (e.g., age, comprehension, memory, physical and mental condition). Although the finding depends on all of the circumstances in the particular case, an individual will be found to have been at fault in connection with an overpayment when an incorrect payment resulted from one of the following:

(a) Failure to furnish information which the individual knew or should have known was material;

(b) An incorrect statement made by the individual which he knew or should have known was incorrect ... or

(c) The individual did not return a payment which he knew or could have been expected to know was incorrect.

20 C.F.R. § 416.552.

*Discussion*

The ALJ concluded that because the resource requirements of the SSI program were explained to Mrs. Marziliano when she previously received an overpayment of $9,000, she should have been aware that the monies she deposited in the Franklin Fund violated the allowable resource limits. (Tr. 15). The ALJ discredited Mrs. Marziliano's explanation that the money was for her children by pointing to the $4,000 withdrawal she made on her own behalf in April 1988 for a trip to Italy. (Tr. 15). He then cited to two instances where Mrs. Marziliano showed an understanding of the resource requirements by spending down her resources to comply with the allowable limits. (Tr. 16). Finally, without a direct reference to the medical reports, the ALJ concluded that Mrs. Marziliano was aware of her duty to report. (Tr. 16). The ALJ's failure to accord proper deference to the

physician's reports violates the treating physician rule adopted by this circuit.

"The treating physician rule governs the weight to be accorded the medical opinion of the physician who treated the claimant". *Schisler v. Heckler*, 787 F.2d 76, 81 (2d Cir.1986). The rule provides that the treating physicians's opinion on the subject of medical disability is:

(i) binding on the fact-finder unless contradicted by substantial evidence; and (ii) entitled to some extra weight because the treating physician is usually more familiar with a claimant's medical condition than are other physicians, although resolution of genuine conflicts between the opinion of the treating physician, with its extra weight, and any substantial evidence to the contrary remains the responsibility of the fact finder.

*Id.*

While it is beyond dispute that an ALJ must follow the treating physician rule when making a determination of the claimant's eligibility for SSI benefits, there appears to be no caselaw addressing whether the same rule is to be applied in assessing whether the claimant was "at fault" in accepting an overpayment.[4] One must therefore turn to the policy underlying the rule. The reason for the rule is to prevent

the ALJ [from] substitut[ing] his or her own inferential judgment for that of a competent medical opinion, particularly where the ALJ's judgment assumes some degree of medical expertise and would amount to rendering an expert opinion which is based on competence which he or she does not possess.

*Ceballos v. Bowen*, 649 F.Supp. 693, 700 (S.D.N.Y.1986). In short, the ALJ is not competent to render expert medical opinions and, in making his or her determinations, should give extra weight to the opinion of the claimant's physician.

Thus, an ALJ can no more substitute his or her own judgment for the treating physi-

cians' in determining in an overpayment case whether a claimant had the capacity to understand the nature of the reporting requirements than he can in deciding whether a claimant's impairment is disabling. Thus, the treating physician rule applies with full force when determining whether a claimant was "at fault" in accepting an overpayment.

In the case at bar, while Mrs. Marziliano's conduct is certainly some evidence of her understanding of the resource requirements, the ALJ nevertheless failed to take into account the contrary evidence presented by Mrs Marziliano's treating psychiatrists. "The cases in this circuit are almost legion where the court has reversed administrative findings due to the factfinder's failure to give appropriate weight to the expert opinion of the treating physician". *De Leon v. Secretary of Health and Human Services*, 734 F.2d 930, 937 (2d Cir. 1984). Mrs. Marziliano's physician, Dr. Biller, stated that he was "quite sure that she did not understand the consequences of saving money or I am sure she would not have put it away". (Tr. 105). The second report, submitted by Dr. Berliner, cites the opinion of Mrs. Marziliano's social worker saying that Mrs Marziliano did not fully understand the nature of the bank account set up by her husband for the benefit of her children. (Tr. 107). While the opinion of Mrs. Marziliano's social worker does not command the same weight as a physician's, it is nevertheless entitled to some consideration. *Cf. Mongeur v. Heckler*, 722 F.2d 1033, 1039 n. 2 (2d Cir.1983) (opinion of nurse practitioner entitled to some extra consideration, but not given the extra weight accorded to treating physician).

The ALJ did not refer to either report in his decision. His sole reference to Mrs. Marziliano's medical history is as follows: "In this regard, while the undersigned is aware that the claimant has a history of mental impairment, the record indicates

---

**4.** The Secretary does not contest the applicability of the treating physician rule here, but instead argues that "the ALJ carefully considered the plaintiff's mental capacity along with other evidence of record and properly concluded that

the medical opinions notwithstanding, plaintiff had the capacity to understand her duty to report". Defendant's Memorandum of Law in Support of his Motion for Judgment on the Pleadings ("Defendant's Memo") at 18.

that the claimant has opened and closed several bank accounts''. (Tr. 16).

This type of conclusory analysis cannot satisfy the treating physician rule which requires that the physicians' opinion be given extra weight. In this case, it appears that the ALJ gave the physicians' reports little or no weight at all.

*Conclusion*

Because the ALJ clearly disregarded the treating physician rule in making his decision, I recommend that the case be remanded for a new hearing to be conducted with proper deference to the medical reports supplied by Mrs. Marziliano's doctors. Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Gerard L. Goettel, 101 East Post Road, White Plains, New York 10601, and to the chambers of the undersigned, Room 633 of the United States Courthouse, Foley Square, New York, New York 10007.

Dated: New York, New York June 24, 1991.