**John WHITE, Plaintiff,**

v.

**COMMISSIONER OF SOCIAL SECURITY, Defendant.**

**No. 02–CV–6461L.**

United States District Court, W.D. New York.

Feb. 4, 2004.

Lawrence I. Heller, Rochester, NY, for Plaintiff.

Christopher V. Taffe, U.S. Attorney's Office, Rochester, NY, for Defendant.

*DECISION AND ORDER*

LARIMER, District J.

### INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("the Commissioner") that John White ("plaintiff") is not disabled under the Social Security Act ("the Act") and, therefore, is not entitled to Supplemental Security Income benefits. Plaintiff applied for benefits under Title XVI of the Act on March 20, 2000. (T. 96–99).[1] His application was denied both initially and

---

1. "T. ___" refers to the page of the administrative transcript filed by the Commissioner.

upon reconsideration. (T. 59–64, 70–73).[2] Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on November 8, 2001. (T. 26–58). The ALJ, after considering all of the evidence, decided that plaintiff was not disabled within the meaning of the Act. (T. 15–25). The ALJ's decision became the final decision of the Commissioner when, on August 17, 2002, the Appeals Council denied plaintiff's request for review. (T. 6–7).

Plaintiff timely appealed the Commissioner's decision and the action is properly before this Court. Both the plaintiff and the Commissioner have moved to remand the case pursuant to sentence four of section 205(g) of the Act. (Dkts. #5 and 8). Plaintiff argues that the ALJ erred in determining that his alcoholism was a contributing factor material to the determination of disability and seeks to remand the case solely for the calculation of benefits. The Commissioner concedes that the ALJ applied the law incorrectly, both when assessing plaintiff's credibility and when considering whether alcoholism was material to plaintiff's disability. The Commissioner, however, seeks to remand the case to the ALJ so that he may make additional findings. I agree with the plaintiff.

For the reasons discussed below, the Commissioner's decision is reversed, and this matter is remanded solely for the calculation and payment of benefits.

## DISCUSSION

### A. Standards for Determining Disability

A person is considered disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment (or combination of impairments) is disabling if it is of such severity that a person "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 423(d)(2)(A).

To determine whether a person is disabled within the meaning of the Act, the ALJ proceeds through a five-step sequential evaluation. *Bowen v. City of New York,* 476 U.S. 467, 470–71, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986) (citations omitted); *Tejada v. Apfel,* 167 F.3d 770, 774 (2d Cir.1999).[3] Once a person has proven

**2.** Currently, plaintiff is receiving Supplemental Security Income based on his subsequent application for benefits that the Commissioner granted retroactive to May 2002. At issue on this appeal is plaintiff's disability and concomitant eligibility for benefits from February 2000 through May 2002.

**3.** The Second Circuit has described the five-step process as follows:

First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether,

steps one through four, the burden then shifts to the Commissioner to show that the person "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.1999) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir.1986)).

■ However, pursuant to 42 U.S.C. § 423(d)(2)(C), a person found to be disabled after employment of the sequential evaluation, will not be considered disabled within the meaning of the Act "if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." The regulations provide that the "key factor" in this analysis is whether the Commissioner would still find a person disabled if he stopped using alcohol. 20 C.F.R. § 416.935(b)(1). In this regard, the Commissioner must evaluate which of a disabled person's current physical and mental limitations would remain if plaintiff stopped using alcohol, and then determine whether those remaining limitations would be disabling. *Id.* at § 416.935(b)(2). If his remaining limitations would still be disabling, then alcoholism will not be a contributing factor material to the determination of disability and the disabled person will be eligible for benefits. The disabled person bears the burden of proving that his

alcoholism is not a contributing factor material to the disability determination. *Brueggemann v. Barnhart,* 348 F.3d 689, 693 (8th Cir.2003); *Ball v. Massanari,* 254 F.3d 817, 821 (9th Cir.2001); *Doughty v. Apfel,* 245 F.3d 1274, 1281 (11th Cir.2001); *Ostrowski v. Barnhart,* No. 01–CV–2321, 2003 WL 22439585, *3 (D.Conn. Oct. 10, 2003).

**B. The ALJ's Decision**

■ Here, the ALJ found that plaintiff had a combination of impairments (including an anxiety disorder, a personality disorder, alcohol dependence, and a discogenic lumbar spine) that was severe but that did not meet or equal a listed impairment. (T. 19). He found that plaintiff had exertional impairments that limited him to performing light work. However, he found that he had non-exertional mental limitations (including psychological impairments) that prevented him from working at all. The ALJ reached this conclusion with the assistance of a vocational expert. Accordingly, at the fifth step of the sequential evaluation, the ALJ found that plaintiff was disabled within the meaning of the Act. (T. 22–23).[4] However, the ALJ concluded that plaintiff's alcohol dependence was a contributing factor material to his disability. According to the ALJ, absent alcohol dependence, plaintiff would not have many of the identified psychological

---

despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform. *Tejada,* 167 F.3d at 774.

4. Specifically, the ALJ concluded that, when considering alcohol dependence as one of plaintiff's impairments, his residual functional capacity included "occasional limitations in the ability to ... interact appropriately

with the general public, accept instruction and respond appropriately to criticism from supervisors, he can only work in a job with minimum contact with others, use public transportation, he can only work in a job with a minimum amount of stress; he has occasional limitations in the ability to perform certain activities within a schedule, maintain regular attendance and be punctual with customary tolerances, complete a normal workday or workweek with interruptions from psychologically based symptoms and to perform at a consistent pace with an unreasonable number and length of rest periods." (T. 23).

and mental impairments that rendered him unable to work. (T. 23).

The Commissioner concedes that the ALJ erred in his determination regarding plaintiff's alcoholism because he failed to explain sufficiently the basis for his decision and did not correctly assess plaintiff's credibility. (Dkt. # 8). Importantly, the ALJ cited no record evidence to support his conclusion regarding the effects of plaintiff's alcoholism on his mental impairments. *See Rosa*, 168 F.3d at 79 (an ALJ " 'cannot arbitrarily substitute his own judgment for competent medical opinion.' ") (citing *McBrayer v. Sec'y of Health and Human Services*, 712 F.2d 795, 799 (2d Cir.1983)). Therefore, the ALJ's decision must be reversed.

The Commissioner asks that the Court remand the case so that the ALJ can another opportunity to state the basis for his decision. (Dkt.# 8). I disagree. First, the Administration had an opportunity to correct this error once before and send it back to the ALJ. However, it choose not to do so when the Appeals Council summarily denied plaintiff's request for review that was based on this error and on additional evidence of plaintiff's impairments. (T. 6–7).

■ Second, a remand for the calculation of benefits is warranted because further administrative proceedings or another hearing would serve no useful purpose. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir.1987); *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir.1980); *Martinez v. Commissioner*, 262 F.Supp.2d 40, 49 (W.D.N.Y. 2003) ("Where the existing record contains persuasive proof of disability and a remand for further evidentiary proceedings would serve no further purpose, a remand for

calculation of benefits is appropriate."). The record here has already been developed fully for the relevant period. The ALJ completed the five-step sequential evaluation and determined that plaintiff was disabled. Neither party disputes the ALJ's finding that plaintiff has a combination of impairments that is severe within the meaning of the Act. It is also undisputed that a vocational expert testified that, given his impairments, no jobs exist in the national economy that plaintiff could perform. (T. 57). Therefore, to remand the case to the ALJ would result in unnecessary delay on an application that plaintiff filed almost four years ago. When the Court considers all of the relevant evidence and applies the proper legal standards, substantial evidence exists that plaintiff's disabling mental impairments would continue absent plaintiff's alcohol dependence. Therefore, remand is appropriate but only for the calculation and payment of benefits.

## C. Evidence Regarding Plaintiff's Disability

Between July 2000 and June 2001, plaintiff was treated at the Genesee Mental Health Clinic by Dr. Gregory Seeger, a psychiatrist, and Garry Mount, plaintiff's therapist and a certified social worker. On August 22, 2000, Dr. Seeger completed a mental residual functional capacity assessment of plaintiff and diagnosed him with a panic disorder without agoraphobia, alcohol abuse, and a personality disorder. (T. 216–19). Dr. Seeger found that plaintiff had "severe" or "moderately severe" mental impairments in nine categories of assessment and "moderate" mental impairments in four others.[5] (T. 216–19). Dr. Seeger concluded that plaintiff's "anxiety

---

5. Among others, Dr. Seeger found that plaintiff was limited in his activities of daily living, and in his abilities to work with frequent contacts with others, to comprehend and fol-low instruction, to meet attendance standards, and to respond appropriately to supervision and customary work pressures.

(panic) may improve slightly with counseling and meds. Claimant's problems nevertheless render him unable to perform substantial employment for at least twelve months." (T. 218). Dr. Seeger opined that plaintiff's prognosis was "poor for panic disorder," but was "good for alcohol abuse." (T. 218).

Dr. Seeger next examined plaintiff on November 3, 2000 and found that plaintiff had a history of panic disorder with symptoms that "waxed and waned over the years" but were "quite severe" at the time. (T. 213). Plaintiff had "classic panic symptoms," including hyperventilation, shortness of breath and tingling in hands, chest tightness, and a fear of having a heart attack that resulted in plaintiff's trips to the Emergency Department. Plaintiff also avoided crowded situations, and primarily stayed at home. Dr. Seeger diagnosed plaintiff with a panic disorder that had worsened to include agoraphobia, a history of alcohol abuse, and a personality disorder. Dr. Seeger recognized that plaintiff had a history of alcohol abuse, but stated that plaintiff and his wife reported that he was sober. Importantly, as part of plaintiff's treatment for panic disorder, Dr. Seeger did not refer him to alcoholism counseling or treatment. (T. 213). This fact is significant because, according to evidence that plaintiff submitted to the Appeals Council, Dr. Seeger was the medical director of the Genesee Alcohol Treatment Center at the time he evaluated plaintiff. (T. 288).

Plaintiff was also treated on approximately a monthly basis by Genesee Mental Health Clinic social worker Garry Mount. (T.246–260). Mount's records report that plaintiff had a panic disorder with significant anxiety, tremulousness, and agoraphobia. Mount worked with plaintiff through individual therapy with the goal of having plaintiff master his anxiety and panic attack symptoms. However, treatment proved to be unsuccessful. Mount's reports indicate that, although plaintiff has a history of alcoholism, he no longer abused alcohol and occasionally had a few alcoholic drinks once a month. (T. 228, 251, 260). According to Mount, plaintiff's self reports regarding his alcohol consumption were "reliable" and were confirmed by his wife. (T. 260). Importantly, in a report dated July 10, 2000, Mount stated that plaintiff "has a panic disorder that has become more noticeable because he stopped drinking." (T. 252).

Plaintiff continued to treat with Mount between July 2001 and March 2002 at the Rochester Mental Health Center. In a report dated July 17, 2001, Mount states that he believed that plaintiff's "extremely rare" use of alcohol "was not a high enough level to refer him to an alcohol and drug clinic." (T. 228). Further, Mount's treatment records state that through February 2002, plaintiff continued to present with significant symptoms of panic and anxiety disorder and agoraphobia. (299–303).

Other reports from Mount filed with the Appeal Council elaborate on the effect that plaintiff's alcoholism had on his mental impairments. Specifically, in a letter to plaintiff's legal representative dated April 26, 2002, Mount reiterated his opinion that he did not find that plaintiff was drinking alcohol frequently enough to refer him to an alcohol treatment program. (T. 288). Mount also stated that plaintiff was not disabled from working because of substance abuse and that, even with limited improvements in his anxiety disorder, he was not able to work full time at any meaningful employment. (T. 289).

■ In his decision, the ALJ did not mention Dr. Seeger's reports. Further, although he stated that he reviewed the Genesee Mental Health Clinic records

carefully, he gave them "little weight" because "they were not completed by a physician." (T. 22). This was error. The Genesee Mental Health Clinic records include reports from Dr. Seeger, a psychiatrist and an "acceptable medical source" according to the Commissioner's regulations. *See* 20 C.F.R. § 416.913(a). At the very least, the ALJ should have considered Dr. Seeger's records and provided an explanation as to the weight he gave Dr. Seeger's findings. *See* 20 C.F.R. § 416.1527(d)(2); *see also Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir.1999) ("Failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.") (internal quotations omitted).

In addition, the ALJ erred by not giving appropriate weight to the opinion of plaintiff's social worker. Although reports of a social worker are not an "acceptable medical source" under the regulations, *see* 20 C.F.R. § 416.913(a), the ALJ should have considered Mount's records as "other source" evidence. 20 C.F.R. § 416.913(d); *Schaal v. Callahan*, 993 F.Supp. 85, 94 (D.Conn.1997) (ALJ erred by not considering opinion of social worker); *Marziliano v. Sullivan*, 771 F.Supp. 69, 75 (S.D.N.Y. 1991) (same); Social Security Ruling 85–16, 1985 WL 56855, at *4 (S.S.A.) (other source evidence, including reports of social workers, "may play a vital role in the determination of the effects of impairment . . . ."). Consideration of Mount's reports was particularly important here given that he is sole source that had a regular treatment relationship with plaintiff. *Bergman v. Sullivan*, No. 88–CV–513L, 1989 WL 280264, *3 (W.D.N.Y. Aug. 7, 1989) (social worker's opinion is "a non-medical source whose opinion concerning the nature and degree of plaintiff's impairment is not only helpful, but critically important, since he is the only treating source.").

Applying the correct legal standards to all of the relevant evidence compels the conclusion that plaintiff's mental impairments would still exist even without his alcohol dependence. *See* 20 C.F.R. § 416.935(b)(2); *Clark v. Apfel*, 98 F.Supp.2d 1182, 1185–86 (D.Or.2000) (remanding case solely for calculation of benefits where ALJ's decision regarding plaintiff's drug addiction was not supported by substantial evidence and was based on legal error); *accord Ingram v. Barnhart*, 72 Fed.Appx. 631, 2003 WL 21801532 (9th Cir.2003) (unpublished opinion) (remand solely for calculation of benefits where ALJ's determination regarding the materiality of plaintiff's alcoholism was not supported by substantial evidence and record compelled conclusion that plaintiff would still be disabled absent alcoholism); *cf. Ostrowski*, 2003 WL 22439585, at *4–*5 (remanding case for reconsideration and further development of the record where ALJ's determination regarding plaintiff's alcohol and drug addiction was not supported by substantial evidence, the medical evidence on this issue was "fundamentally inconclusive," the ALJ failed to consider the effect of plaintiff's psychological impairments on his residual functional capacity, and no vocational expert testimony was taken); *Eltayyeb v. Barnhart*, 02 Civ. 925, 2003 WL 22888801 (S.D.N.Y. Dec. 8, 2003) (plaintiff's alcohol and marijuana dependence considered a contributing factor material to his disability where there was medical evidence from multiple sources that it exacerbated plaintiff's depression, paranoia, and social isolation); *Tablas v. Apfel*, 98 Civ. 5430, 2000 WL 423914 (S.D.N.Y. Mar. 21, 2000) (plaintiff's drug and alcohol dependence were contributing factors material to disability where medical evidence showed that plaintiff relapsed several times into alcohol and drug dependence and that his impairments improved

during periods of sobriety to the point he could work).[6]

## CONCLUSION

Plaintiff's motion for summary judgment and to remand (Dkt.# 5) is granted. The final decision of the Commissioner is reversed, and the case is remanded for calculation and payment of Supplemental Security Income benefits. The Commissioner's motion to remand (Dkt.# 8) is denied.

IT IS SO ORDERED.

---

6. The ALJ's factual conclusion that plaintiff "ha[d] not stopped drinking" during the relevant time period (T. 22) does not warrant a different result. Assuming that plaintiff continued to drink alcohol, it does not follow that his mental impairments would disappear if he stopped drinking. As the Eighth Circuit recognized, even where a claimant is still abusing alcohol or drugs, the ALJ is required to make a determination (albeit hypothetical in nature) regarding whether he would continue to have disabling limitations in the absence of that abuse. *Brueggemann*, 348 F.3d at 695. "Even though the task is difficult, the ALJ must develop a full and fair record and support his conclusion with substantial evidence on this point just as he would on any other." *Id.* Here, the ALJ failed to do so.