Kathleen M. O'HALLORAN, Plaintiff,

v.

Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.

No. 02–CV–6411L.

United States District Court, W.D. New York.

July 7, 2004.

Kevin Bambury, Jeffrey Freedman Attorneys at Law, Rochester, NY, for Plaintiff.

Christopher V. Taffe, U.S. Attorney's Office, Rochester, NY, for Defendant.

## DECISION AND ORDER

LARIMER, District Judge.

### INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("the Commissioner") that Kathleen O'Halloran ("plaintiff") is not disabled under the Social Security Act ("the Act") and, therefore, is not entitled to Disability Insurance Benefits. Plaintiff applied for benefits under Title II of the Act on May 7, 1999, alleging disability based on a mental impairment. (T. 81–83).[1] Her application was denied both initially and upon reconsideration. (T. 57–60; 63–65). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on March 27, 2000. (T. 22–54). The ALJ, after considering all of the evidence, found that plaintiff was not disabled within the meaning of the Act. (T. 12–21). The ALJ's decision became the final decision of the Commissioner when, on June

---

1. "T. ___" refers to the page of the administrative transcript filed by the Commissioner.

14, 2002, the Appeals Council denied plaintiff's request for review. (T. 5–6). Plaintiff timely appealed the Commissioner's decision.

Both plaintiff and the Commissioner have moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). (Dkts.##8 and 11). For the reasons discussed below, plaintiff's motion is granted. The Commissioner's decision is reversed and the case is remanded for further administrative proceedings consistent with this decision and order.

## DISCUSSION

### A. Standards for Determining Disability

A person is considered disabled when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment (or combination of impairments) is disabling if it is of such severity that a person "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy...." 42 U.S.C. § 423(d)(2)(A).

To determine whether a person is disabled within the meaning of the Act, the ALJ proceeds through a five-step sequential evaluation. *Bowen v. City of New York*, 476 U.S. 467, 470–71, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986) (citations omitted); *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir.1999).[2] Once a person has proven steps one through four, the burden then shifts to the Commissioner to show that the person " 'retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy.' " *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.1999) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir.1986)).

### B. The ALJ's Decision

Here, the ALJ found that plaintiff had impairments that were severe (including paranoid schizophrenia, insomnia, and alcohol abuse), but that they did not meet or equal a listed impairment. (T. 17). He next found that plaintiff retained the residual functional capacity to perform less than the full range of medium work due to "significant" non-exertional mental impairments, including a moderate inability to understand, remember, or carry out detailed instructions and a moderate inability to get along with co-workers or peers. (T.

---

**2.** The Second Circuit has described the five-step process as follows:

First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform. *Tejada*, 167 F.3d at 774.

19). Despite these non-exertional impairments, the ALJ found that plaintiff could understand, remember, and carry out simple instructions and could perform simple, repetitive tasks in a low stress work setting. Based on this RFC assessment, the ALJ concluded that plaintiff could return to her past relevant work as a press/bindery operator. The ALJ also concluded that plaintiff's alcohol abuse was not material to a finding of disability. (T. 19).

## C. The ALJ's Decision is Based on Legal Error

The Commissioner's decision that plaintiff is not disabled must be reversed because the ALJ failed to apply the proper legal standards at the third and fourth step of his analysis. It is well-settled that the Commissioner's decision that plaintiff was ineligible to receive benefits must be reversed if it applies the incorrect legal standards or is not supported by substantial evidence. *See Tejada,* 167 F.3d at 773.

### 1. Evaluation of Mental Impairments under 20 C.F.R. § 404.1520a

■ First, the ALJ failed to properly evaluate plaintiff's mental impairment at step three in accordance with the Commissioner's regulations. 20 C.F.R. § 404.1520a requires that the ALJ follow a special technique when assessing the severity of mental impairments like schizophrenia. Specifically, the ALJ must evaluate the degree of functional loss in four areas of functioning: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). In addition, the ALJ must document application of this technique in the written decision. *Id.* at 404.1520a(e)(2) ("[T]he written decision issued by the administrative law judge or Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, includ-

ing examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.").

■ A review of the ALJ's decision in the instant case shows that he failed to evaluate or document the degree of functional limitation in three of the four areas of functioning. The ALJ rated plaintiff's degree of limitation in her activities of daily living only. (T. 18). He then concluded summarily that "the medical evidence of record supports the conclusion that the claimant is able to function adequately in a work environment." (T. 18). However, the ALJ made no findings as to plaintiff's limitations in social functioning, concentration, persistence, or pace, and did not assess episodes of decompensation, all of which are considered to be fundamental to the ability to work. It may be that the error by the ALJ is only in the failure to document fully his evaluation of the degree of functional loss. Nevertheless, a remand is required because the Court cannot evaluate whether substantial evidence exists to support the Commissioner's decision where there is a risk that incorrect legal standards were used as a basis for that decision. *See Schaal v. Apfel,* 134 F.3d 496, 504 (2d Cir.1998) (quoting *Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir.1987)) (" 'Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.' "). Strict adherence to this rule is particularly important in this case because,

as set forth below, the ALJ also erred in his assessment of plaintiff's residual functional capacity and his findings regarding her ability to perform her past relevant work.

### 2. Plaintiff's Residual Functional Capacity

█ The ALJ also erred at the fourth step of the sequential evaluation when he determined that plaintiff had the residual functional capacity to perform her past relevant work as a press/bindery operator. The ALJ concluded that plaintiff had exertional limitations that precluded her from lifting more than fifty pounds. He also found that she had non-exertional limitations, specifically "moderate inabilities to understand, remember and carry out detailed instructions, as well as moderate inability to get along with coworkers or peers." He further found that plaintiff had the ability "to understand, remember and carry out simple instructions, as well as perform simple, repetitive tasks in a low stress work setting." Thus, the ALJ concluded, "since claimant's non-exertional limitations are significant, claimant retains the residual functional capacity to perform somewhat less than the full range of medium exertion work." (T. 19).

In reaching this conclusion, the ALJ did not consider all of the pertinent evidence in the record and failed to follow the Commissioner's regulations and guidelines for assessing mental residual functional capacity, as set forth in 20 C.F.R. § 404.1545 and Social Security Ruling 85–16. 20 C.F.R. § 404.1545(c) provides:

(c) Mental abilities. When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering,

and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work.

Expanding on this, SSR 85–16 sets forth what evidence the Commissioner should consider when assessing a claimant's mental residual functional capacity, and provides:

The determination of mental RFC involves the consideration of evidence, such as:

- History, findings, and observations from medical sources (including psychological test results), regarding the presence, frequency, and intensity of hallucinations, delusions or paranoid tendencies; depression or elation; confusion or disorientation; conversion symptoms or phobias; psychophysiological symptoms; withdrawn or bizarre behavior; anxiety or tension.

- *Reports of the individual's* activities of daily living and *work activity, as well as testimony of third parties about the individual's performance and behavior.*

- *Reports from workshops,* group homes, or similar assistive entities.

*See* Social Security Ruling 85–16, 1985 WL 56855, *2 (S.S.A.) ("SSR 85–16") (emphasis added).

As to the sources of the information necessary to discern a claimant's mental residual functional capacity, SSR 85–16 provides that:

Since treating medical sources often have considerable information about the development and progress of an individual's impairment, as well as information about the individual's response to treatment, evidence from treating sources should be given appropriate consideration. * * * When medical source notes appear to be incomplete, recontact with

the source should be made to attempt to obtain more detailed information. *Every reasonable effort should be made to obtain all medical evidence from the treating source necessary to make a determination of impairment severity and RFC before obtaining evidence from any other source on a consultative basis.* However, when treating medical sources cannot provide essential information, consultative examination by a treating or nontreating source may resolve the impairment or RFC issue. *Similarly, when the reports from these sources appear to be incomplete, the source should be recontacted to clarify the issues.*

*Other evidence also may play a vital role in the determination of the effects of impairment.* To arrive at an overall assessment of the effects of mental impairment, relevant, reliable *information, obtained from third party sources such as social workers,* previous employers, *family members,* and *staff members of* halfway houses, *mental health centers, and community centers,* may be valuable in assessing an individual's level of activities of daily living. *Information concerning an individual's performance in any work setting (including sheltered work* and volunteer or competitive work), as well as the circumstances surrounding the termination of the work effort, *may be pertinent in assessing the individual's ability to function in a competitive work environment.*

*Reports of workshop evaluation may also be of value in assessing the individual's ability to understand, to carry out and remember instructions, and to respond appropriately to supervisors, coworkers, and customary work pressures in a work setting.* Consequently, wherever the record shows that a workshop evaluation has been performed, the report should be requested from the source. If no workshop evaluation has been done, but, after complete and comprehensive documentation, genuine doubt remains as to the individual's functional capacity, consideration should be given to obtaining one. Information derived from workshop evaluations must be used in conjunction with the clinical evidence of impairment, but all conflicts between workshop evaluation evidence and the conclusions based on objective medical findings must be resolved.

SSR 85–16, at *3–*4 (emphasis added).

In assessing plaintiff's residual functional capacity, the ALJ states that he relied on plaintiff's testimony and written statements, and his own observations of her at the hearing. He also states that he relied on the assessments of the State agency review physicians, and gave their opinions "great weight" because he found that they were consistent with the reports and opinions of the claimant's treating and examining physicians. (T. 19).

The transcript, however, does not contain any statements from a treating source regarding how plaintiff's mental impairments affect her ability to perform work-related activities. The transcript contains medical records from The Genesee Hospital Department of Psychiatry, where plaintiff treated with a therapist, Janine Coppini, M.A., and a Registered Nurse Practitioner, Mary Anne Becker, R.N.P. from April 1998 through at least March 2000. These records are the primary source of information regarding the nature and severity of plaintiff's mental impairments, her treatment, prescribed medication, and progress. The ALJ relies heavily on these records in his decision, as he pulls numerous statements from them when addressing what activities of daily living plaintiff can perform. Occasionally, these records make reference as to how plaintiff was handling work in a sheltered work shop environment eight hours a week. (T. 132–58). However, the tran-

script contains no statement or report from either Coppini or Becker regarding how plaintiff's mental impairments would affect her ability to do work-related activities in a competitive environment. On remand, the ALJ should make attempts to obtain statements from these sources regarding plaintiff's residual functional capacity.

■ Although reports of a therapist or registered nurse are not deemed to be a "medical source" under the regulations, *see* 20 C.F.R. § 404.1513(a), the ALJ can consider these reports as "other source" evidence. 20 C.F.R. § 404.1513(d); *Schaal v. Callahan*, 993 F.Supp. 85, 94 (D.Conn. 1997) (ALJ erred by not considering opinion of social worker); *Marziliano v. Sullivan*, 771 F.Supp. 69, 75 (S.D.N.Y.1991) (same); SSR 85–16, at *4 (other source evidence "may play a vital role in the determination of the effects of impairment ....."). Consideration of the opinions of plaintiff's therapist and the nurse practitioner who monitored and prescribed plaintiff's various psychiatric medications for two years was particularly important here given that these are sole sources that had a regular treatment relationship with plaintiff. *See Bergman v. Sullivan*, No. 88–CV–513, 1989 WL 280264, *3 (W.D.N.Y. Aug. 7, 1989) (social worker's opinion is "a non-medical source whose opinion concerning the nature and degree of plaintiff's impairment is not only helpful, but critically important, since he is the only treating source.").

In addition, the ALJ failed to evaluate other pertinent evidence in the record. The ALJ never addressed a letter from a vocational rehabilitation counselor, Tom Sullivan, who has known plaintiff since 1986 and appears to be familiar with how her mental impairments affect her ability to work. Sullivan was of the opinion that, although he believed that plaintiff could function in a sheltered work shop setting, "a normal, competitive job appears to be beyond her capacity." (T. 90). The ALJ also failed to address the testimony of plaintiff's sister, given at the hearing, regarding how plaintiff's mental impairments affected her ability to interact with others, including her own family members, her ability to be in busy public places, and how her symptoms have worsened over time. (T. 49–53).

Moreover, plaintiff worked in a sheltered work shop setting at the Western New York Industries Print Shop as a binder beginning in September 1999. Plaintiff testified at the hearing that she was doing well in this setting because her three co-workers were also schizophrenic and she felt like she fit in there. (T. 32, 45). In this case, where there is no medical statement from a treating psychiatrist or physician about how plaintiff's mental impairments affect her ability to perform basic work activities, the ALJ should have obtained a work shop evaluation from the Western New York Industries Print Shop. *See* SSR 85–16, at *4.

Therefore, the ALJ's mental residual functional capacity assessment of plaintiff must be reversed. *See Schaal*, 993 F.Supp. at 93–94 (reversing and remanding case to Commissioner where ALJ's mental residual functional capacity assessment did not consider all of the pertinent evidence of record and did not follow the mandates of SSR 85–16). On remand, the ALJ should follow the procedures outlined in SSR 85–16 and develop the record more fully, as noted above.

### 3. Plaintiff's Ability to Perform the Mental Demands of her Past Relevant Work

■ The ALJ also failed to make adequate findings at step four regarding the mental demands of plaintiff's past relevant work as a press/bindery operator. There-

fore, even assuming that the Court found that the ALJ's mental residual functional capacity assessment took into consideration all of the relevant evidence and was based on a fully developed record, the Commissioner's decision still would be reversed and remanded. The ALJ's conclusion that plaintiff's non-exertional limitations did not preclude her from performing her past relevant work as a press/bindery operator is not based on findings regarding the mental demands of that particular work.

■ In order to determine whether an impairment prevents a claimant from performing her past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work she has done in the past. *See* 20 C.F.R. § 404.1520(e). When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, *e.g.* speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." *See* Social Security Ruling 82–62, 1982 WL 31386, *3 (S.S.A.); *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir.1994); *Selmo v. Barnhart*, No. 01 Civ. 7374, 2002 WL 31445020, *9 (W.D.N.Y. Oct.31, 2002); *Welch v. Chater*, 923 F.Supp. 17, 20 (W.D.N.Y.1996). The ALJ must then determine the individual's ability to return to her past relevant work given her residual functional capacity. *Washington*, 37 F.3d at 1442.

Here, the ALJ found that plaintiff's significant non-exertional impairments did not preclude her from returning to her past relevant work as a press/bindery operator. However, the ALJ did not develop the record regarding the job duties and mental demands of that work. During the

hearing, he asked plaintiff only very general questions about her experience with this type of work. He did not ask her about mental demands of those work experiences, nor did he engage in the specific factual finding required before determining that she could perform that work, in spite of her significant non-exertional impairments. In fact, when the ALJ asked plaintiff about whether she could perform the work that she did in the sheltered work shop setting in a more "competitive environment," she testified that she could not, given her current mental impairments. (T. 44).

Therefore, the ALJ's decision that plaintiff could perform her past relevant work is reversed. *Selmo*, 2002 WL 31445020, at *10 (ALJ's decision that plaintiff could perform her past relevant work was reversed where ALJ failed to question plaintiff about the mental demands of that work or otherwise develop the record sufficiently); *Welch*, 923 F.Supp. at 20–21 (reversing ALJ's decision for failing to determine if plaintiff's current mental impairments were consistent with the mental demands of her past relevant work). On remand, the ALJ should develop the record regarding the mental demands of a press/bindery operator, and compare those demands with plaintiff's mental residual functional capacity, taking into consideration her non-exertional mental impairments.

### 4. Materiality of Plaintiff's Alcohol Abuse

Finally, because the case is remanded, the ALJ should also properly evaluate the effect that plaintiff's alcohol abuse has on her impairments, if any. Here, the ALJ found that he could not consider "any limitations associated with the claimant's past history of alcohol abuse, since such limitations may have provided the sole basis for a finding of 'disabled,' given that the lack

of any limitations associated with the claimant's other impairments do not provide any support for a finding of 'disabled.'" (T. 19). This was also legal error.

Pursuant to 42 U.S.C. § 423(d)(2)(E), a person found to be disabled after employment of the sequential evaluation will not be considered disabled within the meaning of the Act "if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." The regulations provide that the "key factor" in this analysis is whether the Commissioner would still find a person disabled if she stopped using alcohol. 20 C.F.R. § 404.1535(b)(1). In this regard, the Commissioner must evaluate which of a disabled person's current physical and mental limitations would remain if plaintiff stopped using alcohol, and then determine whether those remaining limitations would be disabling. *Id.* at § 404.1535(b)(2). If her remaining limitations would still be disabling, then alcoholism will not be a contributing factor material to the determination of disability and the disabled person will be eligible for benefits. Thus, when proceeding through the five-step sequential evaluation, the ALJ should consider all of the effects of plaintiff's impairments, including those associated with alcoholism or drug addiction, if any. Only after finding that plaintiff is disabled should the ALJ determine which of these impairments would remain if plaintiff stopped using alcohol.

## CONCLUSION

Plaintiff's motion for judgment on the pleadings (Dkt.# 11) is granted. The final decision of the Commissioner is reversed, and the case is remanded pursuant to sentence four of section 205(g) for further development of the record and application of the correct legal standards consistent with this decision and order. The Commissioner's motion for judgment on the pleadings (Dkt.# 8) is denied.

IT IS SO ORDERED.